IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| KENYA WILLIAMS, JR., FLORSERIDO B. WILLIAMS, and KENYA WILLIAMS | |
| Plaintiffs, | Civil No. 17-7482 (RBK/JS) |
| v. | **OPINION** |
| LENAPE BOARD OF EDUCATION, *et al.*, | |
| Defendant(s). | |

**KUGLER**, United States District Judge:

    **THIS MATTER** having come before the Court upon defendants Kimberly Harrington and the State of New Jersey's (collectively, "State Defendants") motion to dismiss (Doc. No. 9) the plaintiffs' complaint (Doc. No. 1; Ex. A), and defendants Lenape Board of Education, Mr. Walsh, Carol Birnbohn, and Tony Cattani's (collectively, "Lenape") motion to dismiss (Doc. No. 6) the plaintiffs' complaint. For the reasons discussed below, State Defendants' motion is **GRANTED** in its entirety. Lenape's motion is **GRANTED** as to Kenya Williams, Sr. and Florserido Williams's (collectively, "Parents") claims in their entirety, and Kenya Williams, Jr.'s ("Kenya") claim number four (discrimination under Article 1 of the New Jersey Constitution). Lenape's motion is **DENIED** as to the remainder of Kenya's claims.

## I. BACKGROUND[1]

Plaintiffs are suing State Defendants and Lenape for the treatment Kenya[2] allegedly endured as an African-American member of the Lenape School High School football team during the 2015-16 and 2016-17 academic years.

On or around August 29, 2015, Kenya and another African-American football player named Moqueet went to pick up their jerseys. (Compl. at 5). Upperclassmen traditionally picked first, but Kenya and Moqueet were told to go to the back of the line behind white underclassmen. (*Id.*). That same day, Moqueet quit the team due to such treatment. (*Id.*). At some point during the 2015 football season, white students began calling Kenya "n*****." (Compl. at 5). On or around September 28, 2015, a group of parents met with the coaches and athletic director to discuss the racial composition of the football teams. (*Id.*). On October 13, 2015, white players called African-American players "grease monkeys." (*Id.* at 6). Some of the African-American players complained, but were told to handle it themselves.[3] (*Id.*). The African-American players then went to Mr. Murray[4] with their concerns. (Compl. at 6). White players then retaliated by calling Kenya a "snitch." (*Id.*).

Florserido Williams then called Mr. Murray, the Board of Education, and emailed Mr. Cattani and the NAACP about the situation. (*Id.*). On October 28, 2015, Plaintiffs spoke to the Board of Education about the situation. (*Id.*). Florserido then received a call from the State Board of Education telling her to contact the County Board of Education and provided a phone number

---

[1] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the Plaintiff." *Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Accordingly, for purposes of this motion, the Court adopts and accepts as true the facts as pled in the Complaint.
[2] Kenya Williams, Sr. and Florserido Williams are his parents.
[3] Who they allegedly spoke to is not mentioned in the Complaint.
[4] The Complaint does not mention who Mr. Murray is or his position at (presumably) the school.

to do so. (Compl. at 7). Plaintiffs were told that Kenya would—from that point forth—receive a "shadow" and that the school would conduct an investigation of the matter. (*Id.*).

The investigation[5] found evidence of harassment, intimidation, and bullying, and remediation measures were ordered. (*Id.*). Among other things, Kenya would be given a shadow, the harassers would "be given" counseling, Mr. Walsh and Mr. Cattani would address the football team regarding the issues, and a coach would be in the locker room at all times to ensure no further harassment.[6] (*Id.* at 7-8).

On November 2, 2015, Plaintiffs received a call from Mr. Walsh saying that a coach had reported Kenya saying the "N word." (Compl. at 8). On November 4, 2015, Kenya's cleats were missing, and on November 5, 2015, Kenya found a number of his belongings in the trash can. (*Id.*). When Kenya asked another player if he knew who was in Kenya's locker, Ryan Shots[7] told Kenya that he had given the locker to a white sophomore. (*Id.* at 8-9). Words were then exchanged and Mr. Shots told Kenya to hit him while other players egged him on. (*Id.* at 9). Coach Lill then came in and brought Kenya into a different room to talk with him, where Kenya informed Coach Lill about what happened to his belongings. (Compl. at 9). On November 6, 2015, Kenya's missing cleats were in his locker. (*Id.*).

On November 10, 2015, Kenya received an In School Suspension ("ISS") for speaking back to his teacher after his phone was taken away. (*Id.*). Both a white and African-American student tried to defend Kenya, but only the African-American student was sent to the office for detention. (Compl. at 9). That afternoon the football team's bus left Kenya at school. (*Id.* at 10).

---

[5] Who or what entity actually performed the investigation is unclear from the Complaint.
[6] There were, however, ongoing investigations into racially motivated and offensive social media accounts.
[7] It is unclear from the Complaint who Mr. Shots is (i.e. whether he is a player, coach, or administrator).

On November 11, 2015, Parents came to the school to talk to Mr. Walsh about Kenya's ill treatment. (*Id.*). There was a dispute about letting them see the video of the incident in class. (*Id.*). Parents then decided to schedule a meeting with Mr. Cattani. (Compl. at 11). Mr. Cattani called the police because he was intimidated by Kenya Williams, Sr. (*Id.*). Plaintiffs never viewed the video. (*Id.*).

On November 26, 2015, Florserido dropped Kenya off for his last football game of the seasons but his coaches told him to leave and refused to let him dress. (*Id.* at 12). Plaintiffs allege that such hostility, discrimination, and harassment was fostered for the entire 2015 school year and "condoned by school officials, school coaches, and teachers." (*Id.*).

This environment continued into the 2016 season, as the "callous discriminatory behavior continued." (Compl. at 12-13). Plaintiffs continued to make complaints, but these went unanswered and unacknowledged. (*Id.* at 13). Lenape did nothing to stop the abusive behavior. (*Id.*). One of Kenya's abusers blocked for him in a football game which "resulted in [] Kenya being injured." (*Id.*). On October 28, 2016, Kenya's "Senior Night," he was not afforded an opportunity to play. (*Id.*). On November 18, 2016, during a playoff game, Kenya and another player got into an argument. (Compl. at 14). They had to be separated, and exchanged heated words and multiple expletives, including "n*****." (*Id.*). Plaintiffs contacted the Board of Education about the incident, and the Board called Mr. Murray's office to discuss the matter further. (*Id.*). On December 12, 2016, at the Lenape Football Banquet, Kenya was not awarded a varsity letter—Plaintiffs were very upset about this slight. (*Id.* at 14-15).

Plaintiffs now sue under a number of theories: New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10-5:1, et. seq. (count one); Retaliation Under LAD (count two); Intentional Infliction of Emotional Distress (count three); Violations of Title VI of the United States Civil

4

Rights Act (count four); Discrimination Under Article 1 of the New Jersey Constitution (Equal Protection) (count five); and 42 U.S.C. § 1983 (count six). Plaintiffs demand $6,000,000 in damages[8] as well as attorney's fees and costs.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556

---

[8] The Court notes that Plaintiffs' specific monetary demands for unliquidated money damages—the $1,000,000 requested in "compensatory damages" for each count in the Complaint—violates L. Civ. R. 8.1. As in New Jersey state practice, the local federal rules prohibit a demand for a specific dollar amount in the ad damnum clause when a claim is for unliquidated money damages. *See also* N.J. Court Rule 4:5-2.

5

U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id.*

## III. DISCUSSION

### A. Plaintiffs' Claims Against State Defendants Must Be Dismissed For Failing To State A Claim Upon Which Relief Can Be Granted.

State Defendants make five additional arguments—listed below—as to why the Complaint fails and they should be dismissed as defendants. The simple answer, though, is that the Complaint lacks any weight-bearing factual allegations relating to the State Defendants. Plaintiffs fail to allege any personal involvement from State Defendants outside of describing the Commissioner's name and position.

All of Plaintiffs' allegations concern Lenape—there are no allegations of misconduct by State Defendants. There is no factual basis provided in the Complaint to establish or assume that State Defendants were involved in the athletic program or the ongoing mistreatment of Kenya. Taking everything in the Complaint as true, there is no basis upon which Plaintiffs could prove liability for State Defendants. Fed. R. Civ. P. 12(b)(6); *Fowler*, 578 F.3d at 210. As such, the claims against State Defendants must be dismissed in their entirety for failing to state a claim upon which relief can be granted.

State Defendants' additional arguments are discussed below in the order in which they were briefed:

*State agencies and state officers acting in their official capacity cannot be sued under 42 U.S.C. § 1983.*

State agencies and officials acting within their official capacities are not "persons" amenable to suit under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). There is nothing in Plaintiffs' complaint that suggests that State Defendants acted outside of their official capacities. Thus, Plaintiffs' claims against State Defendants under § 1983 (count six) must be dismissed as State Defendants are immune from suit.

*The Commissioner is entitled to qualified immunity from Plaintiffs' federal claims.*

This Court must evaluate two questions regarding qualified immunity: "whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (citing *Conn v. Gabbert*, 526 U.S. 286, 290 (1999) (internal citations omitted)).

Here, Plaintiffs allege discrimination, bullying, harassment, and generally abhorrent behavior by white members of the Lenape football team, and inaction by the Lenape coaches and administrators. While the Fourteenth Amendment's Due Process and Equal Protection Clauses protect against similar state action, State Defendants are right in arguing that it does not guarantee State-level *protection* from such harm. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) (the Due Process Clause "cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means"). As such, Plaintiffs cannot establish liability based solely upon State Defendants' failure to act. The Commissioner is therefore entitled to qualified immunity, as there are no allegations in the Complaint that the Commissioner deprived Plaintiffs of their constitutional or statutory rights in any way.

*Plaintiffs have failed to plead a prima facie case of discrimination against State Defendants under both Title VI and the LAD.*

Title VI bans intentional—and only intentional—racial discrimination in any federally-funded program. *Pryor v. NCAA*, 288 F.3d 548, 562 (3d Cir. 2002) (citing *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001) (Title VI "provide[s] a private cause of action for intentional discrimination only")). Plaintiffs have not alleged any intentional racial discrimination by State Defendants, let alone intentional discrimination in a federally-funded program administered by State Defendants.[9]

The LAD includes similar language.[10] *N.J. Stat. Ann.* § 10:5-4. But Plaintiffs do not allege any places of "accommodation" administered by State Defendants that discriminated against Plaintiffs. *Id.* While the allegations against Lenape are generally much clearer, there is no reason to believe that State Defendants discriminated against Plaintiffs. Plaintiffs' claims against State Defendants under Title VI (count four) and LAD (counts one and two) must therefore be dismissed.

---

[9] We need not delve into the *McDonnell* burden-shifting analysis for a Title VI discrimination claim (and LAD claim, see *Bergen Commercial Bank v. Sisler*, 723 A.2d 944, 954-55 (N.J. 1999)) because Plaintiffs allegations come nowhere near establishing the requisite prima facie case of discrimination. *NAACP v. Medical Center, Inc.*, 657 F.2d 1322, 1333 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973)).

[10] "All persons shall have the opportunity to obtain employment, and to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation, publicly assisted housing accommodation, and other real property without discrimination because of race." *N.J. Stat. Ann.* § 10:5-4.

*Count Three must be dismissed against State Defendants as Plaintiffs have failed to satisfy the requirements of the Tort Claims Act.*

In order to sue State Defendants, Plaintiffs must comply with the New Jersey Tort Claims Act. *N.J. Stat. Ann.* § 59:1-1 *et seq.* ("TCA"). TCA requires that a claimant file a notice of a claim within ninety days of the accrual of a cause of action. *Id.* at 59:8-8(a). Additionally, to recover for pain and suffering, a plaintiff must plead "permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00." *Id.* at 59:9-2(d). Plaintiffs have failed both of these requirements—count three must be dismissed.

*Count Three must be dismissed as Plaintiffs cannot establish that the Commissioner intentionally or recklessly caused Kenya Williams emotional distress.*

An intentional infliction of emotional distress claim requires "extreme and outrageous conduct [which] intentionally or recklessly causes severe emotional distress to another." *Green v. City of Paterson*, 971 F. Supp. 891, 911 (D.N.J. 1997) (quoting *Lingar v. Live-in Companions, Inc.*, 692 A.2d 61, 67 (N.J. Sup. Ct. App. Div. 1997). A plaintiff must prove:

1. "conduct by Defendants so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community;
2. An intentional act, committed with the intent to produce emotional distress or in deliberate disregard of a high degree of probability that emotional distress will follow;
3. Causation and resulting emotional distress that is so severe that no reasonable [person] could be expected to endure it."

*Id.* In short, Plaintiffs have alleged none of the three requisite elements against State Defendants. Count three must therefore be dismissed against State Defendants.

*Conclusion As To State Defendants*

There appears to be no reason why State Defendants should have been dragged into this case alongside Lenape. Plaintiffs' opposition is additionally void of any legitimate arguments otherwise. As such, all of Plaintiffs' claims against State Defendants must be dismissed for failure to state a claim upon which relief can be granted.

B. <u>Parents' Claims Against Lenape Must Be Dismissed.</u>

Parents' claims derive from their status as Kenya's parents—outside of an alleged incident where Lenape called the police during a meeting between the two parties, all of Parents' claims are really just Kenya's. Parents do not allege facts giving rise to a colorable claim on their own.

*Parents' LAD Claims Must Be Dismissed Because They Do Not Allege*

*Discrimination Against Themselves, Only Against Kenya.*

The LAD "did not intend to establish a cause of action for any person other than the individual against whom the discrimination was directed." *Catalane v. Gilian Instrument Corp.*, 271 N.J. Super. 476, 500 (App. Div. 1994). Lenape admits that while the "Complaint does present numerous allegations of discrimination and retaliation against [Kenya] . . . the Complaint is silent on any discrimination or retaliation Lenape directed towards [Parents]." (Lenape Br. at 12). Lenape is correct, and Parents offer nothing in response in their briefing—all of Plaintiffs' collective claims come as a result of factual allegations directed at Kenya. As such, counts one and two should be dismissed as to Parents.

*Parents Fail To Allege Facts Sufficient To Proceed With An IIED Claim.*

The standard for an IIED claim is discussed above.[11] The Complaint alleges facts that can almost certainly sustain an IIED claim as to Kenya. The Complaint does not allege facts that can sustain an IIED claim as to Parents. The only potentially relevant incident alleged regarding Lenape's behavior towards Parents is that Lenape called the police on the Williams family during a meeting to discuss the issues. (Compl. at 11). This is not "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *City of Paterson*, 971 F. Supp. at 911. Count three must be dismissed as to Parents.

*Parents Do Not Have Standing To Bring Title VI Claims.*

Title VI bans intentional racial discrimination in any federally-funded program—this includes schools. *Sandoval*, 532 U.S. 282-83; *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999) (A student plaintiff may recover for "harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit"). Parents, however, cannot recover on their own as they do not constitute the "intended beneficiaries" of relevant federal funding. *Bryant v. New Jersey Dept. of Transp.*, 998 F.Supp. 438 (D.N.J. 1998) (citing the "*Simpson* Doctrine," *Simpson v. Reynolds Metals Co., Inc.*, 629 F.2d 1226 (7th Cir. 1980) (an individual must be an "intended beneficiary of the federal financial assistance received . . . or . . . able to show that the discrimination directed against him affected the beneficiaries of such aid")). Furthermore, Parents' jumbled briefing on this issue is centered on the police incident, their presence during senior night when their son did not receive a varsity letter, the complaints they made about their son's treatment, and the inability of their son to

---

[11] On page 9.

receive a scholarship due to his treatment. These do not rise to the *Davis* standard. 526 U.S. at 633. Parents do not have standing to assert this claim.

C. <u>The New Jersey Constitution Does Not Provide For A Private Right Of Action In Equal Protection Cases.</u>

Plaintiffs claim that both State Defendants and Lenape violated their equal protection rights under the New Jersey Constitution. (*See* Compl. at 22). Article 1 of the New Jersey Constitution provides equal protection guarantees. *K.J. ex rel. Lowry v. Div. of Youth and Family Svcs.*, 363 F. Supp. 2d 728, 745 (D.N.J. 2005); *Peper v. Princeton University Bd. of Trustees*, 77 N.J. 55, 79 (1978). But "cases permitting a private right of action for a violation of an individual's rights under the New Jersey Constitution appear to be limited to employment discrimination under equal protection." *Lowry*, 363 F. Supp. 2d at 746 (citing *Peper*, 77 N.J. 55; *Cooper v. Nutley Sun Printing Co.*, 36 N.J. 189 (1961)).

This is not an employment discrimination case. Thus, Plaintiffs' equal protection claims against all defendants must be dismissed.

D. <u>Kenya Alleges A Viable 42 U.S.C. § 1983 Claim Against Lenape, But Parents Do Not.</u>

A U.S.C. § 1983 claim requires that a person, acting under color of state law, "deprived [Plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Kost v. Kozakiewics*, 1 F.3d 176, 184 (3d Cir. 1993) (quoting *Paratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986)). § 1983 itself "does not create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law." *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906-07 (3d Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Put simply, a § 1983 claim must have a constitutional or statutory violation upon which it stands.

Lenape argues that "Plaintiffs do not offer a cogent theory of liability under § 1983 in Count VI." (Lenape Br. at 19). This argument does not stand. While Parents' Title VI claims against Lenape must be dismissed, Kenya plead enough to survive a motion to dismiss. Fed. R. Civ. P. 12(b)(6); (Compl.).

The Complaint can be generously described as poorly drafted. Plaintiffs' Title VI claims are not incorporated into "**F. Sixth Claim For Relief**, Section 1983," Additionally, Kenya's § 1983 claims may be duplicative of his Title VI claims. But Title VI does not "preclude[] the assertion of the section 1983 claim." *South Camden Citizens in Action v. New Jersey Dep't of Environmental Protection*, 274 F.3d 771, 784 (3d Cir. 2001). As such, Kenya's § 1983 claim should withstand Lenape's motion to dismiss. Parents' claim, however, does not have a constitutional or statutory violation to stand on, and is therefore dismissed.

## IV. CONCLUSION

For the foregoing reasons, State Defendants' motion is **GRANTED** in its entirety. Lenape's motion is **GRANTED** as to Parents' claims in their entirety, and Kenya's claim four (discrimination under Article 1 of the New Jersey Constitution). Lenape's motion is **DENIED** as to the remainder of Kenya's claims.

Dated:   02/16/2018                              s/Robert B. Kugler
                                                 ROBERT B. KUGLER
                                                 United States District Judge